IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

_____

ANGIE M. RONEY,                         )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )    No. 1:22-CV-01178-TMP
                                        )
KILOLO KIJAKAZI,                        )
ACTING COMMISSIONER OF SOCIAL           )
SECURITY ADMINISTRATION,                )
                                        )
        Defendant.                      )

_____

ORDER AFFIRMING THE COMMISSIONER'S DECISION

_____

On August 25, 2022, Angie M. Roney filed a complaint seeking judicial review of a social security decision.[1] (ECF No. 1.) Roney seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II

_____

[1]After the parties consented to the jurisdiction of a United States magistrate judge on November 10, 2022, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 12.)

disability benefits and Title XVI supplemental security income. (R. 19.) For the following reasons, the decision of the Commissioner is AFFIRMED.

## I.   BACKGROUND

### A.   Procedural History

On February 5, 2020, Roney filed applications for Title II disability insurance benefits and Title XVI supplemental security income. (R. 15.) She alleged a disability onset date of August 15, 2019. (Id.) Her claims were denied initially on July 24, 2020, and again upon reconsideration on February 9, 2021. (Id.) Roney filed a request for a hearing, which was held on July 12, 2021. (Id.) The Administrative Law Judge ("ALJ") issued a decision on August 17, 2021. (R. 27.) There, she determined that Roney was not disabled under §§ 1614(a)(3)(A), 216(i), and 223(d) of the Social Security Act ("the Act"). (Id.) On June 24, 2022, the Appeals Council denied Roney's request for further review. (R. 1.) She filed her complaint in the instant case on August 25, 2022. (ECF No. 1.)

Roney has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner. Judicial review of the Commissioner's final decision is available if requested within sixty days of the mailing of the decision. 42 U.S.C. § 405(g). Roney timely filed the instant action. (ECF No. 1.)

**B.    The ALJ's Decision and the Five-Step Analysis**

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis set forth in the Social Security Regulations to conclude that Roney was not disabled. See 20 C.F.R. § 404.1520(a); (R. 27.) That five-step sequential analysis is as follows:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Petty v. Comm'r of Soc. Sec., No. 1:14-cv-01066-STA-dkv, 2017 WL 396791, at *2 (W.D. Tenn. Jan. 30, 2017) (citing Willbanks v. Sec'y of Health & Human Servs., 847 F.2d 301 (6th Cir. 1988)). "The claimant bears the burden of proof through the first four steps of the inquiry, at which point the burden shifts to the Commissioner

to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity.'" Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (quoting Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003)).

However, even if a claimant is found to be disabled under the five-step analysis, if alcoholism or drug addiction is a contributing factor material to the determination of her disability, the "individual shall not be considered disabled." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 380 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(2)(C)). Key to "determining whether drug or alcohol abuse is material in a given case is whether the claimant would still be disabled if he or she stopped using drugs or alcohol." Id. (citing 20 C.F.R. § 404.1535).

At the first step, the ALJ found that Roney had not engaged in substantial gainful activity since August 15, 2019, the date Roney alleged as the onset of her disability. (R. 17.) At the second step, the ALJ found that Roney experienced severe impairments including sleep-related breathing disorder, anxiety disorder, depressive disorder, attention-deficit hyperactivity disorder, post-traumatic stress disorder, and alcohol addiction disorder. (R. 17–18.) However, the ALJ did not find that Roney's other alleged impairments, including interstitial cystitis with humerus ulcers, autoimmune disease, chronic fatigue syndrome, fibromyalgia, irritable bowel syndrome, migraine headaches, lupus,

-4-

and "Sjorgen's syndrome," singly and in combination cause more than minimal functional limitations. (R. 18.)

At the third step, the ALJ found that Roney's severe impairments met the criteria of section 12.04 of 20 C.F.R. Pt. 404, Subpt. P, App 1. (R. 19.) Specifically, these were sleep-related breathing disorder, anxiety disorder, depressive disorder, attention-deficit hyperactivity disorder, post-traumatic stress disorder and alcohol addiction disorder. (Id.)

However, the ALJ found that Roney's alcohol use was material to all her severe conditions except for sleep-related breathing disorder, comparing Roney's medical records from when she was drinking and when she was not. (R. 21.) The ALJ found that Roney's sleep-related breathing disorder would still have more than a minimal impact on Roney's ability to perform basic work activities. (Id.) Nonetheless, the ALJ found that, if Roney stopped her alcohol use, her sleep-related breathing disorder impairment would not meet or medically equal the severity of one of the impairments listed in section 12.04 of 20 C.F.R. Pt. 404, Subpt. P, App 1. (R. 23.)

When a claimant's impairments do not meet or equal a Listed Impairment, an assessment of her residual functional capacity ("RFC") is conducted, based on all the relevant medical and other evidence in the case record. 20 C.F.R. § 404.1520(e). The RFC is used at step four and, if necessary, step five in the process.

-5-

First, at step four, it is used to determine whether the claimant can perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). If a claimant has the RFC to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Roney had the RFC to complete sedentary, semi-skilled work because, based on her husband's assessment, Roney:

> prepares her own meals; she does light indoor housework, including putting dishes in the dishwasher, some laundry, sweeping, and some vacuuming; she drives; she shops in stores and she can go out alone. Additionally, . . . the claimant is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. Moreover, . . . the claimant has no problems getting along with family, friends, neighbors, or others and that she has never been fired or laid off from a job because of problems getting along with other people.

(R. 25) (citations to exhibit omitted). Based on these findings, along with records from medical assessments, Roney's testimony, and testimony from a Vocational Expert ("VE"), the ALJ found that Roney was able to perform the "physical and mental demands" of her past relevant work as a data entry secretary because she retained "a residual functional capacity for the full range of light work" the job requires. (R. 25-26.)

Because the ALJ found that Roney could perform her past work, step five was no longer necessary. The ALJ nonetheless concluded that, were Roney to avoid alcohol, she could perform other jobs existing in significant numbers in the national economy as well.

(Id.) The ALJ therefore held that a finding of not disabled was appropriate. (R. 26.)

Roney now seeks judicial review of the ALJ's decision. She argues that the ALJ incorrectly found that her physical conditions, singly and in combination, are not disabling, that the ALJ erroneously evaluated Roney's substance use disorder as a contributing material factor to her disability, and that the ALJ inaccurately assessed Roney's ability to work. (ECF No. 25.)

The Commissioner contends that substantial evidence supports the ALJ's findings as to Roney's severe conditions and the materiality of her substance abuse, as well as her findings regarding Roney's ability to perform light work. (ECF No. 30.)

## II.   ANALYSIS

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v.

Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1150 (2019) (quoting Consolidated Edison Co. v. Nat'l Lab. Rels. Bd., 305 U.S. 197, 229 (1938)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility

determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

## B.   The ALJ's Original Step Three Analysis

Roney argues that the ALJ erred in finding that her physical conditions, which include interstitial cystitis with humerus ulcers, autoimmune disease, chronic fatigue syndrome, fibromyalgia, irritable bowel syndrome, migraine headaches, lupus, and "Sjorgen's syndrome," are not severe. At step three of the sequential evaluation process, the claimant has the burden of establishing a condition that satisfies the requirements of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R. §§ 404.1505, 404.1520, 416.905, 416.920; Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). Because the Listings permit a finding of disability based solely on medical evidence (without considering a claimant's vocational profile), the Commissioner applies a heightened evidentiary standard at step three. Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 710 (6th Cir. 2013). To establish an impairment that meets a Listing, a claimant must present "specific medical evidence to satisfy all of the criteria" of the Listing. Perschka v. Comm'r of Soc. Sec., 411 F. App'x 781, 786 (6th Cir. 2010) (citing 20 C.F.R. § 416.925). An impairment that manifests only some of the criteria,

no matter how severely, does not qualify. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

An ALJ is required to address a particular Listing when the record raises a "substantial question" as to whether the claimant satisfies the requirements of the Listing. Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 432 (6th Cir. 2014) (quoting Abbott v. Sullivan, 905 F.2d 918, 925 (6th Cir. 1990)). To raise a "substantial question," the claimant must point to specific evidence that demonstrates she "reasonably could meet or equal every requirement of the listing." Smith-Johnson, 579 F. App'x at 432. If the claimant presents sufficient evidence to raise a "substantial question" at step three, "[a]n administrative law judge must compare the medical evidence with the requirements for Listed Impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011). The ALJ must "actually evaluate" the evidence, compare it to the section of the Listing at issue, and give an "explained conclusion," in order to "facilitate meaningful judicial review." Id. at 415-16. "Without it, it is impossible to say that the [ALJ's] decision at Step Three was supported by substantial evidence." Id. at 416 (citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 (3d Cir. 2000); Senne v. Apfel, 198

F.3d 1065, 1067 (8th Cir. 1999); Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).

The court must therefore begin by determining whether Roney raises a substantial question as to whether she satisfies a Listing. Roney does not point to any specific Listing for her physical conditions. However, several of the conditions she alleges are similar to those listed.

### 1. Sjögren's Syndrome

Roney alleges she suffers from severe "Sjorgen's syndrome," which this court understands to be Sjögren's Syndrome. The ALJ's determination that Roney's Sjögren's Syndrome was not severe enough to trigger disability benefits is supported by the record. Listing 14.10 applies to Sjögren's Syndrome, noting that the condition can affect "[m]any other organ systems" including the genitourinary system, causing "interstitial cystitis . . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In order to meet or equal this Listing, a claimant's

> medical evidence will generally, but not always, show that [her] disease satisfies the criteria in the current "Criteria for the Classification of Sjögren's Syndrome" by the American College of Rheumatology found in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

Id. The Primer on the Rheumatic Diseases describes two types of Sjögren's Syndrome, with the most common symptoms relating to dry mouth, dry eyes, and musculoskeletal pain. Troy Daniels, *Sjögren's*

*Syndrome*, *in* <u>Primer on the Rheumatic Diseases</u> 389 (13th ed., John
H. Klippel et al. eds. 2008).

Roney self-reported dry mouth several times, but never
ascribed it to Sjögren's. <u>See</u> R. 557 (describing dry mouth as a
side effect of one of her medicines); R. 24 (discussing Roney's
breathing disorder, "the record is devoid of consistent, ongoing
complaints of . . . awakening with a dry mouth"). At a January 12,
2021 appointment with Advanced Gastro, Roney denied having any dry
mouth. (R. 836.) Roney's only self-reported mention of dry eyes is
ascribed to the side effects of another medication. (R. 557.) The
medical report prepared after Roney filed her claim stated that
there was no finding for Sjögren's from her physical exam. (R.
356.)

To qualify as a severe impairment, the regulations require:

Sjögren's syndrome. As described in 14.00D7. With:
  A.  Involvement of two or more organs/body systems,
      with:
      1.  One of the organs/body systems involved to at
          least a moderate level of severity; and
      2.  At least two of the constitutional symptoms or
          signs (severe fatigue, fever, malaise, or
          involuntary weight loss).
  or
  B.  Repeated manifestations of Sjögren's syndrome,
      with at least two of the constitutional symptoms
      or signs (severe fatigue, fever, malaise, or
      involuntary weight loss) and one of the following
      at the marked level:
      1.  Limitation of activities of daily living.
      2.  Limitation in maintaining social functioning.
      3.  Limitation in completing tasks in a timely
          manner due to deficiencies in concentration,
          persistence, or pace.

-12-

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Because there is neither a diagnosis nor any verification for the symptoms, the ALJ did not err in her decision. Roney was unable to provide "specific medical evidence to satisfy all of the criteria" of the Sjögren's Listing. Perschka v. Comm'r of Soc. Sec., 411 F. App'x 781, 786 (6th Cir. 2010) (citing 20 C.F.R. § 416.925). Roney did not provide any information regarding a diagnosis for Sjögren's, and her examination did not turn up any of the symptoms for the condition, let alone symptoms severe enough to fall under 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found that Roney can perform basic physical movements without serious limitations. (R. 18). Although the ALJ did not give a detailed breakdown of each symptom of Sjögren's Syndrome, Roney never raised a "substantial question" because she never pointed to specific evidence that demonstrates she "reasonably could meet or equal every requirement of the listing." Smith-Johnson, 579 F. App'x at 432. The ALJ's explanation of her reasoning with regard to Sjögren's Syndrome is therefore sufficient.

### 2. Systemic Lupus Erythematosus (SLE)

The ALJ's determination that Roney did not have SLE severely enough to trigger disability benefits is supported by the record. Listing 14.02 applies to SLE. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In order to meet or equal this Listing, a claimant's

> medical evidence will show that [her] SLE satisfies the
> criteria in the current "Criteria for the Classification
> of Systemic Lupus Erythematosus" by the American College
> of Rheumatology found in the most recent edition of the
> Primer on the Rheumatic Diseases published by the
> Arthritis Foundation.

Id. The Primer on the Rheumatic Diseases describes SLE as "a composite of clinically unrelated manifestations often accumulated over time . . . ." Jill P. Buyon, *Systemic Lupus Erythematosus*, *in* Primer on the Rheumatic Diseases 317 (13th ed., John H. Klippel et al. eds. 2008). "With rare exception, the unifying laboratory abnormality is the presence of circulating antinuclear antibodies (ANA)." Id. at 303. SLE most commonly affects the skin, joints, kidneys, lungs, and cardiovascular system, and frequently causes a plethora of neurological symptoms. Id. at 305-11.

Roney's medical records include two reports of irritated skin: once at a Pathways meeting on June 6, 2022, where she described having a rash on her arms and leg and that her "skin was 'burning'" (R. 82); and several weeks before at Pathways meeting on May 23, 2022, where she stated she had a burning sensation the week prior and had bumps on her skin. (R. 194.) No skin condition was reported when Roney had her medical evaluation following her claim. The medical report also found no joint inflammation. (R. 356.) In fact, the physical examination found no evidence of SLE. Id. Roney provided no evidence of ANA in her blood, which could have shown the presence of SLE. See Buyon, *Systemic Lupus*

-14-

*Erythematosus*, *in* <u>Primer on the Rheumatic Diseases</u> 317 (13th ed., Klippel et al. eds.) ("With rare exception, the unifying laboratory abnormality is the presence of circulating antinuclear antibodies (ANA).").

To qualify as a severe impairment, the regulations require:

Systemic lupus erythematosus. As described in 14.00D1. With:
    A.  Involvement of two or more organs/body systems, with:
        1.  One of the organs/body systems involved to at least a moderate level of severity; and
        2.  At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
  or
    B.  Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
        1.  Limitation of activities of daily living.
        2.  Limitation in maintaining social functioning.
        3.  Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Again, because there is neither a diagnosis nor any verification for the symptoms, the ALJ did not err in her decision. Roney was unable to provide "specific medical evidence to satisfy all of the criteria" of the SLE Listing. <u>Perschka v. Comm'r of Soc. Sec.</u>, 411 F. App'x 781, 786 (6th Cir. 2010) (citing 20 C.F.R. § 416.925). Roney did not provide any information regarding a diagnosis for SLE, and her examination did not turn up any of the

symptoms for the condition, let alone symptoms severe enough to fall under 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found that Roney can perform basic physical movements without serious limitations. (R. 18.) Although the ALJ did not give a detailed breakdown of each symptom of SLE, Roney never raised a "substantial question" because she never pointed to specific evidence that demonstrates she "reasonably could meet or equal every requirement of the listing." Smith-Johnson, 579 F. App'x at 432. The ALJ's explanation of her reasoning with regard to SLE is therefore sufficient.

### 3. Other Physical Conditions

With no physical or medical evidence to support her remaining physical ailments, Roney is unable to show that the ALJ's determination as to her physical condition was erroneous. Roney never raised a "substantial question" as to any of her remaining conditions because she never pointed to specific evidence that demonstrates she "reasonably could meet or equal every requirement of [any] listing." Smith-Johnson, 579 F. App'x at 432. The ALJ quoted extensively from the physical examination results, describing movement capabilities inconsistent with the severe conditions Roney alleges. (R. 18.) Roney's medical record consists of no documentation that refutes these findings. Based on the record presented, there is a sufficient basis for the ALJ's assessment. The ALJ's determination as to Roney's alleged severe

-16-

conditions was supported by the record and therefore was not erroneous.

## C.   Roney's Substance Use Disorder as a Contributing Material Factor to Her Disability

Roney argues that the record lacks substantial evidence to support the ALJ's step three finding that her substance use disorder is a material factor to her disability status. (ECF No. 25.) Specifically, she argues first that the ALJ improperly accepted parts and rejected other parts of the medical assessment, trying to "have it both ways" and, second, that the "examples of excessive alcohol use in the opinion [are] overblown and repetitious to the point of excess." (Id.) Roney contends that because of this, the ALJ violated the Social Security Administration's Social Security Ruling 13-2p (SSR 13-2p), which requires that, when evaluating the materiality of alcoholism, the adjudicator provide sufficient information in her decision so that a subsequent reviewer could understand the materiality finding. (Id.)(citing SSR 13-2p, 2013 WL 621536 at *2 (Feb. 20, 2013)).

First, the ALJ did not err in accepting parts and rejecting parts of the July 2020 medical assessment. Opinion evidence from doctors is not treated as fact: the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). ALJs consider the persuasiveness of medical opinions based on the

-17-

factors listed in 20 C.F.R. §§ 404.1520c(c) and 416.920c(c). An ALJ neither errs nor abuses her power by weighing each part of a medical opinion to evaluate whether it appears accurate, supportable, and consistent based on the rest of the record. Here, the ALJ was discharging her duty by accepting a medical opinion with regard to Roney's function when considering alcohol use while rejecting another part of the opinion regarding her function without alcohol. (R. 21, 25.)

Although the ALJ does not explain her reasoning at length in the section in which she rejects parts of the medical opinion, Part 4 of the opinion details extensively the ALJ's reasoning for finding Roney's alcohol addiction disorder material to her step three determination. (Id.) This information is more than sufficient for a reviewing judge to understand the reasoning behind the ALJ's materiality determination. There is thus no SSR 13-2p violation.

Second, based on the evidence in the record, the ALJ did not err in her assessment of Roney's alcohol abuse disorder. Initially, the ALJ determined that Roney had "marked" limitations in concentrating, persisting, or maintaining pace, and in adapting or managing oneself. (R. 19.) When labeled as having marked limitations, Roney satisfied the Paragraph B criteria to be deemed disabled. (Id.) However, because the ALJ also found that Roney had a substance use disorder, she was required to assess whether

-18-

Roney's alcohol use was a material factor to the determination of his disability. See Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 380 (6th Cir. 2013). Upon reexamination, the ALJ determined that Roney would only experience "minimal" limitations to her ability to perform basic work if she were to cease alcohol use. (R. 21.)

When assessing Roney's limitations in the absence of alcohol use, the ALJ conducted a review of the record and found that Roney would only have a mild limitation in understanding, remembering, or applying information. (R. 22.) The ALJ took note of Roney's self-reported ability to drive and go out alone and her husband's assessment explaining that Roney can prepare food, shop, pay bills, and handle a savings account. (Id.) The ALJ also relied on the face-to-face interview with the Social Security field officer, who wrote that Roney had no issue with reading, understanding, coherency, or talking. (Id.)

The ALJ found that Roney would have a mild limitation interacting with others, too. The ALJ again relied on the field officer's report that Roney had no issue talking and also considered her husband's statement that Roney had "no problems getting along with family, friends, neighbors, or others . . . ." (Id.)

With regard to Roney's ability to concentrate, persist, or maintain pace, the ALJ also found that, without alcohol, Roney only faced a mild limitation. (R. 23.) The ALJ relied on the field

-19-

officer's interview, which stated Roney had no issue concentrating, as well as the fact that Roney had no problems completing the paperwork required to receive disability, showing "that she has the abilities to concentrate and to persist on tasks until completion." (Id.)

Finally, the ALJ found that Roney's ability to adapt and manage herself would also be only mildly limited. (Id.) The ALJ relied on Roney's statement that she places dishes in the dishwasher and laundry in the washer, her husband's statements that she can conduct light housework, and medical records regarding Roney's judgment. (Id.)

Ultimately, because Roney's record includes periods where alcohol use was frequent as well as periods of relative sobriety, the ALJ was able to contrast Roney's self-assessments and medical records from both periods against one another. (R. 21–22.) Upon doing so, she concluded that Roney's substance use was a material factor to his disability determination. (R. 17.) Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1149 (2019). The ALJ's review of the record and subsequent discussion of her findings sufficiently explained her decision-making. Additionally, this information is more than sufficient for a reviewing judge to understand the reasoning for the ALJ's materiality determination. There is thus no SSR 13-2p violation.

**D.    Roney's Ability to Work**

Roney argues that the record lacks substantial evidence to support the ALJ's finding that, if she were to stop using alcohol, she would retain the RFC to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). (ECF No. 25.) She contends that her

> testimony and the medical records revealed both physical and non physical limitations, including insomnia and sleep induced need from medications, inability to lift more than five pounds consistently, loss of memory at times, need to frequently urinate, frequent need to be absent from the work station.

(Id.) Roney disputes the ALJ's assertion that these facts were considered in the final decision, drawing special attention to the VE's testimony that a person may not be able to work with some of the conditions Roney alleges.

The ALJ's finding that Roney is capable of certain work was not in error because substantial evidence in the record supports her decision. Roney points almost entirely to her own, unsubstantiated assertions about her conditions as proof of their existence. The medical records that describe the physical conditions she alleges are virtually all self-reported. By contrast, Dr. Keown, who evaluated Roney on June 30, 2020, found that she had "no physical restrictions . . . ." (R. 713.) The state agency medical consultation further found that Roney did not have major trouble sitting, standing, or walking and stated she could

lift and carry as much as fifty pounds. (R. 354-56.) However, the ALJ did not simply accept these as true, but instead proceeded to conduct a thorough review of the record, finding Dr. Keown's conclusion and the state agency's conclusion regarding Roney's lifting and carrying capabilities unpersuasive. (R. 21.)

The ALJ considered Roney's sleep-related breathing disorder and determined that, if she were to cease consuming alcohol, this alone would not prevent her from performing the responsibilities associated with light work. (R. 24.) She weighed Roney's allegations about her own physical capabilities against Roney's statements about doing the dishes and laundry. (Id.) She factored Roney's face-to-face interview with the Social Security field officer, after which the officer commented Roney had no issues hearing, reading, breathing, understanding, coherency, concentrating, talking, sitting, standing, walking, seeing, using hands, and writing. (Id.) She factored Roney's ability to write legibly and fill out forms. (Id.) She factored Roney's husband's statements, where he described Roney's physical challenges but also endorsed her ability to handle money, care for herself, engage socially, and drive. (R. 24-25.) Finally, the ALJ factored that Roney did not provide evidence to show consistent, ongoing treatment for the physical conditions she alleged.[2]

---

[2] See SSR 16-3P, 2017 WL 5180304 at *9 (Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is

The ALJ did not explicitly discuss the VE's testimony in her opinion, but the context for the testimony is crucial. The ALJ asked the VE first to

> please consider a hypothetical individual of the claimant's age, education, and work experience who could perform the exertional requirements of sedentary work. However, that individual would be able to remember basic workplace locations and procedures. Could remember and understand only simple, one to two-step instructions. She could maintain concentration, pace, and persistence for simple, repetitive tasks. Contact with coworkers and supervisors should be noncollaborative, and superficial. She could have brief and infrequent public contact. She would do best in structured environments, with predictable work tasks, and minimal social contacts. And job duties would not require a great deal of decision making or goal setting. Could such an individual perform any of the claimant's past work?

(R. 54.) In response, the VE stated that such person would not be able to complete Roney's old work but would be able to complete several other jobs like clerical addresser, document preparer, and surveillance systems monitor. (Id.) The ALJ then asked whether

> the same individual described in hypothetical one, except this individual would be only capable of sedentary work. In addition, this individual would need to lie down two times during the workday in addition to her regular breaks for 30 minutes, could such an individual perform any of the jobs you've already indicated?

(R. 54–55.) To this, the VE responded "absolutely not, there is no lying down on the job." (R. 55.)

---

not comparable with the degree of the individual's subjective complaints, . . . [an ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

-23-

This testimony is compelling at first glance, but it does not reflect the remainder of the evidence. Based on the ALJ's findings regarding Roney's physical condition, especially where she ceases alcohol consumption, Roney is not like the hypothetical claimant in the ALJ's question. For example, the ALJ found that Roney's ability to understand, remember, or apply information is only moderately limited if Roney ceases to consume alcohol. (R. 22.) A person with moderate limitations to her memory could do more than "remember and understand only simple, one to two-step instructions . . . ." (R. 54.) The ALJ's discounting of the VE's testimony was thus not done in error.

Although another judge might reach a different conclusion based on the record, this court's duty is to review whether the ALJ's findings are substantially supported by the record. 42 U.S.C. § 405(g). The evidence of Roney's physical capabilities collected from evaluations, interviews, and statements as well as the lack of evidence to support her own assertions substantially supports the ALJ's conclusions in this case.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

-24-

IT IS SO ORDERED.

                                         s/ Tu M. Pham
                                        TU M. PHAM
                                        Chief United States Magistrate Judge

                                         September 11, 2023
                                         Date